IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOAN DOBIAS-DAVIS,
    Plaintiff,

v.                                                                  Civil Action No. 3:15-cv-00393-JAG

AMAZON.COM.KYDC, LLC,
and ALLYSON HOFFMAN,
    Defendants.

## OPINION

Amazon.com.kydc, LLC ("Amazon"),[1] fired Joan Dobias-Davis. Dobias-Davis alleges that her supervisor, Allyson Hoffman, made defamatory statements about Dobias-Davis's performance in two separate performance plans. In doing so, and in the process of carrying out these performance plans, Amazon—through Hoffman—allegedly discriminated against Dobias-Davis because of her gender and age, in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Dobias-Davis sued, bringing a claim for defamation against both Amazon and Hoffman, and bringing two discrimination and two retaliation claims against Amazon. Amazon and Hoffman now move to dismiss the defamation claim, and Amazon moves to dismiss the two retaliation claims. As to the defamation claim, because this claim needs more factual development, the Court DENIES the partial motion to dismiss. As to the retaliation claims, because Dobias-Davis did not engage in a protected activity under Title VII or ADEA, the Court GRANTS Amazon's partial motion.

---

[1] Amazon.com.kydc, LLC, a subsidiary of Amazon.com, Inc., provides warehousing and storage operations. (Compl. ¶ 3.)

## I. BACKGROUND

Dobias-Davis began working for Amazon in 2010. In April 2012, the company promoted her to Senior Human Resources Manager, and then transferred her to the newly-opened distribution center in Chesterfield County, Virginia. According to Dobias-Davis, this facility staffs a young workforce and maintains a clear "youth culture." (Compl. ¶ 10.) In contrast, when Amazon fired her, Dobias-Davis was the oldest employee in her specific position employed by Amazon in North America.

In April 2013, Dobias-Davis came under the supervision of Hoffman. After some sort of conflict on a teleconference, Hoffman allegedly displayed apparent hostility towards Dobias-Davis, and began what some co-workers labeled a "witch hunt." (*Id.* at ¶ 14.) This supposedly marked the beginning of Hoffman's campaign to end Dobias-Davis's employment with Amazon.

The first salvo in this alleged campaign was the Development Plan ("the Plan") that Hoffman presented to Dobias-Davis in early March 2014. According to Dobias-Davis, the Plan came without warning or prior notification, and contained "objectively false factual assertions, implications and innuendo." (*Id.* at ¶ 18.) Concerned by the Plan's assertions, Dobias-Davis promptly set up a meeting with Hoffman's supervisor, Troy Winters. During this meeting, she provided Winters with facts and metrics that she hoped would rebut the negative statements about her work performance.

Dobias-Davis then spoke directly to Hoffman, asking for examples of her peers who Hoffman felt performed above expectations. "Hoffman responded that a younger male (age mid-30s) was an example of a 'Top Tier' Senior HR Manager. (*Id.* at ¶ 20.) Dobias-Davis compared her overall performance to his concluding that their comparative performances did not justify Hoffman's negative assertions.

In April 2014, Hoffman placed Dobias-Davis on a Performance Improvement Plan ("PIP"), "the most severe form of Amazon performance management." (*Id.* at ¶ 23.) PIPs "allow[] managerial assertions of substandard performance to be reviewed, and improved, by providing objective standards and sufficient time to perform against such standards." (*Id.* at ¶ 27.) Dobias-Davis claims that, once again, Hoffman placed false factual claims about her work performance in the PIP. She also claims that Hoffman shortened the timeline for completion of the PIP from 90 days to 30 days.

A few days later, Dobias-Davis contacted her Human Resources Business Partner, Emily Meadows, to "complain of retaliation, the falsity of the PIP, and Hoffman's continued course of conduct." (*Id.* ¶ 31.) Dobias-Davis informed Meadows that Hoffman refused to work with her on the Plan and the PIP.

Dobias-Davis allegedly completed all objectives in the PIP within the 30 day timeline. Nonetheless, Amazon fired her in early June 2014. She immediately reported "selective treatment" to Meadows, who "failed to address the selective treatment." (*Id.* at ¶ 35.) At some point, Dobias-Davis "requested that the termination be extended to the normal PIP period, [90 days,] allowing [previously awarded Amazon stock awards] to vest, but Amazon refused." (*Id.* at ¶¶ 40, 42.)

Dobias-Davis filed a formal charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"). In it, she "identified to Amazon, by name," eight younger male managers working at the same facility who Amazon allowed 90 or more days to complete their PIPs. (*Id.* at ¶ 37.) She also identified by name four "[c]omparably situated younger Amazon HR managerial employees with no better performance within the same organization

3

[who] were not placed on Development Plans, PIPs, or terminated." (Compl. ¶ 39.) The EEOC issued a "Notice of Right to Sue," which Dobias-Davis did in 2015.

## II. DISCUSSION[2]

Amazon and Hoffman move to dismiss Dobias-Davis's defamation claim, and Amazon moves individually to dismiss both retaliation claims. Turning first to the defamation claim, the Court finds that this case needs more factual development. Until the Court has more facts to flesh out the claims presented in the complaint, it cannot decide whether the complaint fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570.

Turning to the retaliation claims, Dobias-Davis asserts that Amazon retaliated against her for engaging in activities protected by Title VII and ADEA. This alleged retaliation took form in the Plan, the PIP, the expedited timeline for completion of the PIP, and her eventual firing. Title VII and ADEA both prohibit employers from retaliating against employees who oppose discrimination based on gender or age, respectively. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e-3(a) (Title VII). A plaintiff bringing a retaliation claim under either statute must first establish a *prima facie* case of retaliation. To do so, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) a causal relationship

---

[2] Amazon filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim, or judging the applicability of any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 960 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "The tenet that a court must accept as true all of the allegations contained in a complaint[, however,] is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

existed between the protected activity and the adverse employment action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (addressing retaliation under both Title VII and ADEA).

Focusing on the first prong, the Fourth Circuit breaks "protected activity" down into two forms, participation and opposition. *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Participation involves "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing." *Id.* This most often takes the form of filing equal employment opportunity ("EEO") complaints. *See Causey*, 162 F.3d at 803 (filing EEO complaints constitutes protected activity); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (same). On the other hand, opposition to discriminatory activities may include "'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints . . . about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (citations omitted).

While "[n]o particular magic words are required" to oppose unlawful practices, a plaintiff must at least show that she actually opposed employment practices made unlawful by Title VII or ADEA, rather than merely objecting to generalized workplace grievances. *Young v. Giant Food Stores, LLC*, No. PWG-14-2006, 2015 U.S. Dist. LEXIS 74151, *33–34 (D. Md. June 8, 2015). This means that her complaints must put her employer on notice of the alleged violations. *See Ruffner v. MD OMG EMP LLC*, No. WDQ-11-1880, 2012 U.S. Dist. LEXIS 113977, at *11 (D. Md. Aug. 13, 2012) ("The employee must, at least implicitly or indirectly, complain about or oppose prohibited discrimination. Complaints about a supervisor's 'rude' conduct, or other generalized complaints which do not alert the employer or person receiving the complaint 'that [the employee's] complaints were based on an allegation of discrimination,' are not protected

activity."); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011) (city should have known that complaints of "'harassment' likely encompassed sexual harassment and 'unethical,' 'degrading and dehumanizing' conduct suggest[ed] severe misbehavior related to [plaintiff's] identity"); *Navy Fed. Credit Union*, 424 F.3d at 407 (finding opposition where an employee refused to participate in a discriminatory evaluation of another employee); *Young*, 2015 U.S. Dist. LEXIS 74151, at *33 (D. Md. Jun. 8, 2015) (finding that an employee opposed Title VII violations when she specifically complained about a supervisor's "disparate treatment of her *as compared to* her male co-workers") (emphasis added).

In this case, Dobias-Davis's claims fail the first prong of the retaliation analysis because she did not engage in a protected activity. She did not file any official complaints alleging discrimination until after her termination. Thus, the Court construes her potential protected activity under the opposition to unlawful practices framework.

Dobias-Davis had three separate discussions opposing her situation—namely the Plan and the PIP—with Winters, Hoffman, and Meadows. Yet in each of those discussions, she failed to even imply that she faced discrimination due to her gender or her age. Only once did one of the parties involved mention someone's gender or age, and even then not explicitly so. Indeed, in her conversations with Winters and Meadows, Dobias-Davis only opposed the Plan, the PIP, and Hoffman as a supervisor.

The one incident involving a mention of age or gender occurred during Dobias-Davis's conversation with Hoffman about the Plan. Dobias-Davis asked Hoffman to name a peer manager who Hoffman thought performed above expectations. Hoffman mentioned a male manager in his mid-30s, presumably by name rather than by identifying characteristics. In response, Dobias-Davis simply compared her performance to his, concluding that objective

measures did not justify a negative comparison. She did not accuse Hoffman of giving him a better review, or her a worse one, based upon their differing gender or age. These vague references to a characteristic, absent something more, could not have put Hoffman or Amazon on notice of a claim of discrimination. *See Ruffner*, 2012 U.S. Dist. LEXIS 113977, at *11.

Nor did Dobias-Davis make discrimination claims to anyone else in Amazon management. Rather than suggesting discrimination, the discussions portrayed in the amended complaint suggest personal animosity between Dobias-Davis and Hoffman, beginning with the teleconference encounter. Dobias-Davis's complaints to Amazon management centered on this antagonistic relationship, not on a claim of discrimination based on her age or gender. As such, this Court cannot find that Dobias-Davis's complaints put Amazon's management on notice that she opposed perceived gender or age discrimination. At worst, the complaints seemed to put Amazon management on notice of personal animosity between Dobias-Davis and Hoffman.

In her amended complaint, Dobias-Davis lists younger and/or male employees who Amazon either (1) allowed 90 or more days to complete their PIP, or (2) did not place on a Development Plan or PIP, or did not terminate. Dobias-Davis admits, however, that she "identified [these managers] to Amazon, by name, in [her] Amended Charge of Discrimination" with the EEOC after her termination. (Compl. ¶¶ 37, 39.) Dobias-Davis presents no facts suggesting that these identifications occurred before her termination. Accordingly, the identifications cannot form the basis of a retaliation claim, as Amazon had already terminated Dobias-Davis.

This Court finds that Dobias-Davis never alluded to gender or age-based discrimination under Title VII or the ADEA during her discussions with Amazon management. As she did not oppose conduct prohibited by either statute, she does not state a claim under the first prong of a

7

*prima facie* retaliation case: engaging in a protected activity. Without the first prong, Dobias-Davis does not state a plausible claim for retaliation under Title VII or ADEA.[3]

### III. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART the defendants' partial motion to dismiss. The Court GRANTS the motion as to Dobias-Davis's retaliation claims. The Court DENIES the motion as to her defamation claim.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 1/11/16
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[3] Because Dobias-Davis cannot make out the first prong of a *prima facie* retaliation case, this Court need not address the other two prongs of the analysis.